UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
RANDY COLON, HUGH SMITH, EDWARD
VAIANA, ELVI RODRIGUEZ, and TYRON
MAYNOR,

                        Plaintiffs,

                                            MEMORANDUM & ORDER

        -against-                           12-CV-4466 (JS)(SIL)

COUNTY OF NASSAU; MICHAEL J.
SPOSATO, Sheriff of Nassau County;
ARMOR CORRECTIONAL HEALTH, INC.;
DR. KAY, M.D.; DR. OMANU, M.D.;
DR. VINCENT MANETTI, M.D.;
NURSE ADMINISTRATOR HAILEY;
DR. SANTARELLI, D.D.S.,

                        Defendants.
--------------------------------------X
APPEARANCES
For Plaintiffs:         Randy Colon, pro se
                        # 11004724
                        Elvi Rodriguez, pro se
                        # 12005521
                        Tyron Maynor, pro se
                        # 11009446
                        Nassau County Correctional Center
                        100 Carman Ave.
                        East Meadow, NY 11554

                        Hugh Smith, pro se
                        # 12A2978
                        Edward Vaiana, pro se
                        # 12A4152
                        Altona Correctional Facility
                        555 Devils Den Road
                        P.O. Box 3000
                        Altona, NY 12910

For the County
Defendants:             Pablo A. Fernandez, Esq.
                        Nassau County Attorney's Office
                        One West Street
                        Mineola, NY 11501

```
For the Armor
Defendants:                    John J. Doody, Esq.
                               Suzanne E. Aribakan, Esq.
                               Lewis Brisbois Bisgaard & Smith, LLP
                               77 Water Street, Suite 2100
                               New York, NY 1005
```

SEYBERT, District Judge:

Currently before the Court is a motion to dismiss filed by defendants Dr. Kay, M.D.; Dr. Omanu, M.D.; Dr. Vincent Manetti, M.D.; Nurse Administrator Hailey, R.N.; Dr. Santarelli, D.D.S. (collectively, the "Individual Armor Defendants"); and Armor Correctional Health, Inc. ("Armor," and together with the Individual Armor Defendants, the "Armor Defendants"). For the following reasons, the Armor Defendants' motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

I.   Factual Background

Pro se plaintiffs Randy Colon ("Colon"), Hugh Smith ("Smith"), Edward Vaiana ("Vaiana"), Elvi Rodriguez ("Rogriguez"), and Tyron Maynor ("Maynor") (collectively, "Plaintiffs")[2] are a

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[2] Plaintiffs filed the Complaint in this action accompanied by applications to proceed in forma pauperis. On October 4, 2012, this Court granted in forma pauperis status to each Plaintiff, with the exception of Plaintiff Daniel Miller ("Miller"), whose application was denied pursuant to the "three strikes" rule under 28 U.S.C. § 1915(g). (Docket Entry 19.) On November 21, 2012, the Court dismissed Miller's claims because he failed to

group of former and current inmates incarcerated at the Nassau County Correctional Center (the "NCCC"). Plaintiffs assert various federal and state law claims against the Armor Defendants and additional defendants Nassau County (the "County") and the Nassau County Sheriff, Michael J. Sposato ("Sposato") (collectively, "Defendants"), arising out of Defendants' alleged failure to provide adequate medical care to Plaintiffs while housed at the NCCC. The Complaint alleges various purported violations and is organized into sections by the particular claim and/or defendant. In reciting the facts, the Court will draw from the Complaint's structure.

A.   The County's Contract with Armor

On June 1, 2011, the County and Sposato entered into a contract with Armor, a "Florida-based health care corporation," for Armor to provide medical services for the inmates at the NCCC. (Compl. at 8[3], ¶¶ 1, 4.) According to Plaintiffs, the contract "confines" Armor to a $25 million budget, which covers "all costs and fees for medications, salaries, supplies, and even community

---

pay his pro rata share of the filing fee. (Docket Entry 23.) He still has not paid the filing fee, and the Court's discussion herein is therefore limited to the claims and allegations of the remaining Plaintiffs. Additionally, the only claims against Defendant Dr. Omanu are those of Miller's. Accordingly, the Clerk of the Court is directed to TERMINATE Dr. Omanu as a defendant in this matter.

[3] The page numbers of the Complaint are those generated by the Electronic Case Filing system.

based health care services . . . and tests and procedures."
(Compl. at 9, ¶ 5.) Plaintiffs claim that the contract, because
it subjects Armor to a fixed budget, causes Armor "to cut costs
wherever possible" in order to maximize profit, which in turn
results in "sub-standard" healthcare services. (Compl. at 10,
¶ 7.) This, Plaintiffs contend, constitutes deliberate
indifference to the medical needs of the inmates at the NCCC in
violation of the Eighth and Fourteenth Amendments.

B. Dr. Kay

The Complaint also makes the following allegations
against Defendant Dr. Kay. Dr. Kay is the Chief Medical Officer
of the NCCC. (Compl. at 10, ¶ 11.) Plaintiffs allege generally
that, as the Chief Medical Officer, Dr. Kay "adheres to and
enforces" Armor's "company policy" of limiting "medication
dispensing and prescribing" within the budget for the NCCC
"notwithstanding medical need." (Compl. at 10-11, ¶ 11.)
Plaintiff Smith alleges that Dr. Kay refused to order batteries
for his hearing aids despite the fact that Smith was "in possession
of" medical records that demonstrate that he requires hearing aids.
(Compl. at 11-12, ¶ 14.) Additionally, Smith claims that he has
"documented" podiatric issues and is a type 2 diabetic but Dr. Kay
"refuses" to send him for a podiatric or ophthalmological consult.
(Compl. at 12, ¶ 15.) Plaintiff Colon similarly alleges that he
is a type 1 diabetic and that Dr. Kay has "consistently denied

4

podiatric and ophthalmological preventative care." (Compl. at 12, ¶ 17.) Based on these allegations, Smith and Colon claim that Dr. Kay was deliberately indifferent to their medical needs in violation of the Eighth and Fourteenth Amendments and that he committed medical malpractice under New York state law.

C.  Dr. Manetti

The Complaint makes the following allegations against Dr. Manetti. Dr. Manetti is employed by Armor as a staff psychiatrist at the NCCC. (Compl. at 14, ¶ 23.) Plaintiffs allege generally that inmates at the NCCC with documented psychiatric history "have been denied psychoactive medication" "based on Armor's strict budget policies." (Compl. at 14, ¶ 24.) For example, Plaintiff Rodriguez alleges that when he was previously housed at the NCCC, he "was given psych[o]active medication" but that Dr. Manetti later told him "well, since Armor doesn't want to pay for it, I guess you don't need it." (Compl. at 14, ¶ 25.) Plaintiff Smith similarly alleges that he was denied psychoactive medication "based on Armor's strict budget policies" despite a "well documented 10+ year psych history." (Compl. at 14, ¶ 24.) Based on these allegations, Smith and Rodriguez claim that Dr. Manetti was deliberately indifferent to their medical needs in violation of the Eighth and Fourteenth Amendments and that he committed medical malpractice under New York state law.

D.  Nurse Administrator Hailey

The Complaint makes the following allegations against Nurse Administrator Hailey ("Nurse Hailey").  Plaintiffs allege that Nurse Hailey "consistently overrules tests, procedures, consults, and other treatments deemed medially necessary by Licensed Physicians and Specialized Care Practitioners," despite the fact that her nursing license limits her to the practice of nursing.  (Compl. at 15-16, ¶¶ 29-31.)  Plaintiff Maynor claims that a physician at the NCCC referred him to the Nassau University Medical Center ("NUMC") for his elbow.  (Compl. at 16, ¶ 32.)  Although a physician at the NUMC opined that surgery for Maynor's elbow was "medically necessary," Nurse Hailey "decided unilaterally that the operation was not medically necessary."  (Compl. at 16, ¶¶ 33, 34.)  Based on these allegations, Maynor claims that Nurse Hailey was deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments and that she "is guilty of practice of medicine without a license."  (Compl. at 15.)

E.  Dr. Santarelli

The Complaint makes the following allegations against Dr. Santarelli.  Dr. Santarelli is a dentist employed by Armor.  (Compl. at 19, ¶¶ 43-44.)  Plaintiffs allege generally that Dr. Santarelli refuses to provide "preventative dentistry" except for inmates sentenced as county prisoners and that he performs

extractions and other painful procedures without administering anesthesia. (Compl. at 19, ¶¶ 44, 46.) Smith alleges that after he chipped his tooth in August 2012, Dr. Santarelli filed the damaged tooth with a drill without first administering anesthesia and then refused to give him Tylenol for the pain. (Compl. at 20, ¶¶ 47-48.) Based on these allegations, Smith claims that Dr. Santarelli was deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments and that he committed dental malpractice.

F.    Privacy Claims

Plaintiffs also allege that Armor staff "constantly permit[ ] correction staff [to] access Confidential Medical Records" and discuss "Mental Health and HIV-related--and other confidential health matters--with the correctional staff, without express written consent." (Compl. at 18, ¶ 41.) For example, on August 15, 2012, Captain Ford, the Chief Administrative Officer, told Plaintiff Vaiana "that the 'Facility Physician' discussed with him details of [Vaiana's] medical conditions . . . without written consent or release." (Compl. at 18-19, ¶ 42.) Based on these allegations, Vaiana contends that the County, Sposato, and Armor have violated the Health Information Portability and Accountability Act ("HIPAA") and "other state and Federal privacy laws [that] prohibit the dissemination of Confidential Medical Information to any third party." (Compl. at 18, ¶ 40.) The

Complaint also states the Court "may wish to consider" a "conspiracy against rights" claim as well as a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Compl. at 20-21, ¶ 51.)

G.  Injunctive and Declaratory Relief

The Complaint also seeks various forms of injunctive and declaratory relief.  Specifically, the Complaint seeks "a preliminary and permanent injunction, enjoining, prohibiting and restraining enforcement of the contract" between the County and Armor.  (Compl. at 28.)  It also seeks a judgment declaring (1) that the contract violates the Eighth and Fourteenth Amendments and thus is illegal and unenforceable; (2) that the Individual Armor Defendants are "guilty" of medical malpractice and deliberate indifference; and (3) that Defendants "violate Plaintiffs' rights under HIPAA and other Federal and state privacy laws."  (Compl. at 26-27.)

II.  Procedural History

On December 3, 2012, mail sent by the Court to Plaintiffs Vaiana, Rodriguez, and Maynor at the NCCC was returned as undeliverable with notations that these plaintiffs were "DISCHARGED."  (Docket Entries 25-27.)  However, Vaiana subsequently filed a notice of change of address on April 10, 2014, respectively advising the Court that he had been transferred to the Altona Correctional Facility (the "ACF") in Altona, New York.

(Docket Entry 54.) Rodriguez and Maynor have not updated their addresses.

On December 6, 2013, the Armor Defendants moved to dismiss this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 50.) Plaintiffs have not submitted oppositions. This motion is currently pending before the Court.

### DISCUSSION

The Court pauses for a moment to note that it is fully aware that Plaintiff Miller, who has been terminated, was likely the driving force behind the filing of this action. He drafted and filed the Complaint--as he has done for other inmates in the past, see, e.g., Burroughs v. Cnty. of Nassau, No. 13-CV-6784, 2014 WL 2587580, at *5 (E.D.N.Y. June 9, 2014)--and none of the remaining Plaintiffs have filed an opposition to the Armor Defendants' motion to dismiss. Additionally, Plaintiffs Rodriguez and Maynor have failed to update their addresses with the Court, and nearly two years elapsed before Plaintiff Vaiana finally provided his updated address after he left the NCCC. The Court makes these points not as an indictment with respect to the merits of Plaintiffs' claims, but instead, as a warning that a failure to prosecute this action, including the failure to apprise the Court of any future address changes in a timely fashion or at all, may result in dismissal of this action. That aside, the Court will

turn to the Armor Defendants' motion.  The Court will first set forth the applicable legal standard before turning to the motion specifically.

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009).  <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.  <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. Because Plaintiffs are litigating <u>pro</u> <u>se</u>, the Court construes the Complaint liberally.  <u>See,</u> <u>Mancuso v. Hynes</u>, 379 F. App'x 60, 61 (2d Cir. 2010).

## II. Failure to Exhaust Administrative Remedies

The Armor Defendants initially argue that the Complaint should be dismissed because Plaintiffs have failed to exhaust their administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Armor's Br., Docket Entry 51, at 8-9.) The Court disagrees.

The PLRA states in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 984, 152 L. Ed. 2d 12 (2002).

Here, Plaintiffs allege that "[e]ach of the issues has been grieved through the facility process, by one Plaintiff or another." (Compl. at 2.) Nonetheless, the Armor Defendants argue that the Complaint should be dismissed because "there is no indication of when or t[o] whom the grievances were made, no allegations of the outcome of these purported grievances[,] or that any of the plaintiffs undertook further action to complain of or appeal any purported inaction." (Armor's Br. at 9.) However,

failure to exhaust is an affirmative defense, and the Supreme Court has held that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 912, 166 L. Ed. 2d 798 (2007). "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." Roland v. Smith, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012) (citing McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)). Here, non-exhaustion is not clear from the face of the Complaint. In fact, the Complaint specifically alleges that Plaintiffs grieved "each of the issues." (Compl. at 2.) Accordingly, the Armor Defendants' motion to dismiss on the ground of failure to exhaust is DENIED.

III. Section 1983

The Armor Defendants next argue that, even if Plaintiffs have exhausted their administrative remedies, Plaintiffs have otherwise failed to state claims for deliberate indifference to their medical needs under 42 U.S.C. § 1983 ("Section 1983"). (Armor's Br. at 9-18.) The Court will first set forth the applicable law and then separately address whether Plaintiffs have sufficiently stated claims against each of the Individual Armor Defendants and against Armor.

A.  Applicable Law

Section 1983 states that:

> [e]very person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes
> to be subjected, any citizen of the United
> states . . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured . . . .

42 U.S.C. § 1983.  To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive right.  Rather, it is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989).

Here, Plaintiffs claim that the Armor Defendants were deliberately indifferent to their medical needs in violation of the Eighth and Fourteenth Amendments.[4]  To state a claim of

[4] The Eighth Amendment prohibits "cruel and unusual punishment." Thus, "it has been held applicable only to those individuals who have been criminally convicted and sentenced--and are thus being 'punished' for something." Davis v. Cnty. of Nassau, 355 F. Supp. 2d 668, 674 (E.D.N.Y. 2005).  Here, the Complaint does not

deliberate indifference to an inmate's medical needs, a plaintiff must plead two elements: (1) that the alleged deprivation of medical care was "sufficiently serious" and (2) that the defendant acted with deliberate indifference, i.e., "the charged official must [have] act[ed] with a sufficiently culpable state of mind." See Salahuddin v. Goord, 467 F.3d 263, 279-81 (2d Cir. 2006).

To determine whether a deprivation is "sufficiently serious," the Court must make two inquires. The first inquiry is whether "the prisoner was actually deprived of adequate medical care," keeping in mind that "the prison official's duty is only to provide reasonable care." Id. at 279. The second inquiry, which is an objective question, "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. at 280.

The second requirement of a deliberate indifference claim--i.e., that "the charged official . . . act[ed] with a sufficiently culpable state of mind"--is a subjective question.

---

make clear whether the conduct complained of occurred post-conviction or while Plaintiffs were housed at the NCCC as pre-trial detainees. The distinction is irrelevant, however, because "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).

Id.  "[T]he official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." Id.  Deliberate indifference is "equivalent to subjective recklessness, as the term is used in criminal law." Id.  In other words, "[t]his mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. However, "the risk of harm must be substantial and the official's actions more than merely negligent." Id.  With these standards in mind, the Court will turn to the allegations against the Armor Defendants.

B.   The Individual Armor Defendants

The Armor Defendants assert that Plaintiffs have not sufficiently alleged deliberate indifference claims against the Individual Armor Defendants.  (Armor's Br. at 10-17.)  The Court agrees in part and disagrees in part as discussed below.

1.   Dr. Kay

The Complaint alleges that Dr. Kay was deliberately indifferent to Smith's and Colon's medical needs by (1) refusing to order batteries for Smith's hearing aids; (2) refusing to send Smith for a podiatric or ophthalmological consult; and (3) "consistently" denying Colon podiatric and ophthalmological "preventative care."  (Compl. at 10-13.)

The Armor Defendants first argue that Smith's and Colon's allegations regarding the denial of podiatric and ophthalmological care are insufficient to state a deliberate indifference claim against Dr. Kay because "the Complaint concedes that the underlying conditions [of diabetes] are not serious, but rather are potentially life threatening issues." (Armor's Br. at 12 (emphasis in original) (citing Compl. ¶ 20).) This argument is easily dismissed. Courts in this Circuit have held that "diabetes is a sufficiently serious medical condition to meet the objective prong" of a deliberate indifference claim. Beatty v. Davidson, 713 F. Supp. 2d 167, 174 (W.D.N.Y. 2010) (collecting cases). Moreover, it is irrelevant that the Complaint alleges that Smith's and Colon's conditions were only "potentially" life threatening because a condition does not need to be life threatening to form the basis of a deliberate indifference claim. See Regeda v. City of N.Y., No. 09-CV-5427, 2012 WL 7157703, at *7 (E.D.N.Y. Sept. 7, 2012) ("[T]he defendants' argument that conditions that do not threaten death or basic functioning are not sufficiently serious is inaccurate because a prisoner does not have to suffer 'extreme pain' or a degenerative condition in order to meet the legal standard for objective seriousness."), adopted by 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013); see also Mims v. Ufland, No. 07-CV-1926, 2007 WL 4208582, at *3 (S.D.N.Y. Nov. 21, 2007) ("The 'seriousness' inquiry . . . is 'ill-suited for resolution at the pleading stage

and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition.'" (quoting Smith v. Carpenter, 316 F.3d 178, 188 n.14 (2d Cir. 2003)).  Thus, Smith and Colon have alleged sufficient facts to satisfy the objective prong of their deliberate indifference claims regarding the alleged denial of diabetes treatment.

The Armor Defendants also argue that Smith and Colon have not satisfied the subjective prong of their deliberate indifference claim because they have not pleaded facts "upon which a plausible inference may be inferred that Dr. Kay was aware that" denying podiatric and ophthalmological care "posed a risk" to "Smith and/or Colon's health or safety."  (Armor's Br. at 12.) The Court disagrees.  Construing the Complaint liberally, as it must, Smith and Colon suggest that Dr. Kay denied treatment because of budgetary constraints.  If this is true and if the treatments at issue were medically necessary, this allegation could support a conclusion that Dr. Kay was deliberately indifferent to Smith's and Colon's medical needs.  See Liner v. Fischer, No. 11-CV-6711, 2013 WL 4405539, at *21 (S.D.N.Y. Aug. 7, 2013) (denying motion to dismiss deliberate indifference claim because "[i]f, as [plaintiff] alleges, he was denied necessary medication for almost two years [due to 'budget cuts,'] this delay could potentially be a factor in support of a finding of deliberate indifference");

17

Stevens v. Goord, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("While disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim."). Thus, Smith and Colon have alleged sufficient facts to satisfy the subjective prong of their deliberate indifference claims regarding the alleged denial of diabetes treatment.

The Court also finds that Smith has alleged sufficient facts to support a deliberate indifference claim regarding the alleged denial of batteries for his hearing aids. Plaintiff alleges that his medical record "shows that he requires hearing aids . . . and Dr. Kay . . . refuse[s] to order batteries." (Compl. at 12, ¶ 14.) Although scant, these allegations could support a claim of deliberate indifference to a serious medical need. See Wheeler v. Butler, 209 F. App'x 14, 15 (2d Cir. 2006) ("[T]he District Court erred in failing to consider whether the deprivation of Wheeler's hearing aids could, in and of itself, amount to cruel and unusual punishment . . . ."); Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 412 (S.D.N.Y. 2006) (denying motion to dismiss deliberate indifference claim regarding denial of hearing aids), granting reconsideration on other grounds, 452 F. Supp. 2d 328 (S.D.N.Y. 2006).

In sum, Smith and Colon have stated plausible claims of deliberate indifference based on the alleged denial of diabetes treatment and hearing aid batteries. Accordingly, the Armor Defendants' motion to dismiss Smith's and Colon's claims against Dr. Kay is DENIED.

    2.  Dr. Manetti

The Complaint alleges that Dr. Manetti was deliberately indifferent to Rodriguez's and Smith's medical needs when he denied them "psychoactive medication." (Compl. at 13-15.) The Armor Defendants move to dismiss these claims for substantially the same reasons as the claims against Dr. Kay. They argue that the Complaint does not raise plausible inferences that the denial of care was "sufficiently serious" and that Dr. Manetti was aware that the denial of medication posed a risk to Rodriguez's and Smith's health and safety. (Armor's Br. at 14-15.) The Court again disagrees.

The Complaint alleges that Rodriguez "was given psych[o]active medication" but that Dr. Manetti told him "well, since Armor doesn't want to pay for it, I guess you don't need it." (Compl. at 14, ¶ 25.) If true, the fact that Rodriguez was previously treated for a psychiatric condition with medication would clearly indicate that his condition was serious. See Hamm v. Hatcher, No. 05-CV-0503, 2013 WL 71770, at *8 (S.D.N.Y. Jan. 7, 2013) ("Courts have repeatedly held that treatment of a psychiatric

or psychological condition may present a serious medical need.").
Moreover, if Dr. Manetti subsequently denied Rodriguez medication
based solely on Armor's budget, and not on actual medical need,
Rodriguez could also establish the subjective prong of a deliberate
indifference claim. Smith's allegations, although not as
compelling as Rodriguez's, also state a deliberate indifference
claim because he alleges that he was denied psychoactive medication
despite a "well documented 10+ year psych history" "[b]ased on
Armor's strict budget policies." (Compl. at 14, ¶ 24.)

In sum, Smith and Rodriguez have stated plausible claims
of deliberate indifference based on the alleged denial of
medication for their alleged psychiatric conditions. Accordingly,
the Armor Defendants' motion to dismiss Rodriguez's and Smith's
deliberate indifference claims against Dr. Manetti is DENIED.

### 3. Nurse Hailey

The Complaint alleges that Nurse Hailey was deliberately
indifferent to Maynor's medical needs when she "decided
unilaterally" that he did not need surgery for his elbow
notwithstanding the fact that a "specialized care provider" at the
NUMC opined that surgery was "medically necessary." (Compl. at
15-17.)

The Armor Defendants argue that this claim must be
dismissed because it "amounts to nothing more than a difference of
opinion in the course of treatment between two medical

professionals, which does not rise to the level of a constitutional violation." (Armor's Br. at 15.) The Court disagrees. Although it is true that "disagreements" over medical treatment "implicate medical judgments and not the Eighth Amendment," Wright v. Genovese, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010), aff'd, 415 F. App'x 313 (2d Cir. 2011), the Complaint does not simply allege a disagreement between a physician and an inmate over medical treatment. Rather, the Complaint alleges that Nurse Hailey--who is not a physician and who is not authorized to overrule a physician's medical opinion--"decided unilaterally," "without even seeing or examining" Maynor, that Maynor's surgery was not "medically necessary" despite the fact that a doctor opined that it was. (Compl. ¶¶ 33-35.) Thus, the cases regarding disagreements in medical treatment are inapplicable here.

The Court finds that these allegations state a claim of deliberate indifference. If a physician opined that surgery for Maynor's elbow was "medically necessary," then Maynor could establish that his elbow condition was "sufficiently serious" under the objective prong of the deliberate indifference claim. Additionally, if Nurse Hailey decided that surgery was not necessary even though she was not qualified to make such a determination, then Maynor could also establish that she acted with deliberate indifference to Maynor's health. See Stevens, 535 F. Supp. 2d at 388. Accordingly, the Armor Defendants' motion to

dismiss Maynor's claim arising out of Nurse Hailey's alleged denial of elbow surgery is DENIED.

### 4. Dr. Santarelli

The Complaint alleges that Dr. Santarelli was deliberately indifferent when he filed Smith's chipped tooth with a drill without administering anesthesia or giving him Tylenol. (Compl. at 19-20.) As discussed below, the Court finds that this allegation does not state a deliberate indifference claim.

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 832, 844, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994)). Here, the Complaint does not allege that Dr. Santarelli failed to address Smith's medical need--i.e., the need for tooth repair. Rather, Smith appears to disagree with Dr. Santarelli's decision to drill his tooth without anesthesia. In this regard, courts have found that the administration of anesthesia for minor medical procedures is not a serious medical need implicating the Eight Amendment. As the Court in Bout v. Bolden, 22 F. Supp. 2d 646 (E.D. Mich. 1998), aff'd 225 F.3d 658 (6th Cir. 2000) explained:

> Plaintiff's "serious medical need" was not for anesthesia, but rather for tooth repair. Plaintiff's disagreement with the course of treatment--the decision to drill without anesthesia rather than further delay treatment

22

> given the minor nature of the repair and
> relatively brief period of pain--does not
> state a constitutional claim. Had [the
> dentist] gratuitously drilled plaintiff's
> teeth for no good medical reason, then the
> evidence would clearly support a finding of
> willful and wanton infliction of pain and
> plaintiff would have supported a direct claim
> for cruel and unusual punishment contrary to
> the Eighth Amendment. However, where pain was
> an incidental part of a dentist's chosen
> course of treatment, the question is not
> whether [the dentist] was indifferent to the
> incidental pain, but rather whether he was
> indifferent to plaintiff's existing dental
> condition. Plaintiff conceivably may have
> some other claim against [the dentist]--for
> battery, perhaps, for malpractice, perhaps--
> but he does not have a constitutional claim
> arising out of his treatment . . . .

22 F. Supp. 2d at 651; see also Buchanan v. United States, No. 05-
CV-0887, 2007 WL 983312, at *4 (M.D. Pa. Mar. 27, 2007) (dismissing
as not cognizable inmate's claim "that the deliberate decision not
to administer anesthesia or pain killing medicine [before cleaning
and suturing a laceration] subjected him to unnecessary pain in
violation of the Eighth Amendment's prohibition against cruel and
unusual punishment"). The Court is persuaded by the reasoning of
these cases. Here, Smith alleges no facts to suggest that Dr.
Santarelli engaged in cruel and unusual punishment in violation of
the Eight Amendment. Smith might have a claim under some other
theory of liability but he does not have a constitutional claim
arising out of his dental treatment as currently pleaded.
Accordingly, the Armor Defendants' motion to dismiss Smith's claim

regarding Dr. Santarelli's alleged decision to drill his tooth without anesthesia is GRANTED and this claim is DISMISSED.

C.  Armor

The Complaint also alleges that Armor itself was deliberately indifferent to Plaintiffs' medical needs based upon the alleged conduct of the Individual Armor Defendants. (Compl. at 17, ¶ 37.) The Armor Defendants move to dismiss this claim, arguing that Plaintiffs "do not identify an unlawful or unconstitutional Armor policy or practice" sufficient to subject it to liability based on the alleged actions of its employees. (Armor's Br. at 18.) The Court disagrees.

"Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." Filarsky v. Delia, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012). Thus, a private employer acting under color of state law may be held liable under Section 1983 for the acts of its employees where the unconstitutional act was authorized or undertaken pursuant to the official policy of the private entity employer and the employer was jointly engaged with state officials or its conduct is chargeable to the state. See Cofield v. Armor Corr. Health, No. 12-CV-1394, 2012 WL 1222326, at *2 (E.D.N.Y. Nov. 2, 2012) (citations omitted).

Armor does not contend that its conduct is not "fairly attributable to the state." Rather, as noted above, it argues

that Plaintiffs have not identified an official policy sufficient to trigger Section 1983 liability. However, the Complaint alleges generally that the contract between it and the County subjects Armor to a fixed budget and that Armor consequently "cut[s] costs wherever possible" in order to maximize profit. (Compl. at 10, ¶ 7.) In addition, the Complaint also alleges that Dr. Kay "adheres to and enforces a 'company policy' of Armor, which limits medication dispensing and prescribing to the facility formulary within the budget for the contract . . . . notwithstanding medical need," and that Dr. Manetti told Rodriguez "well, since Armor doesn't want to pay for [psychoactive medication], I guess you don't need it." (Compl. ¶¶ 11, 25.) Thus, based on these allegations, Armor is potentially liable under Section 1983. See Cephas v. Nassau Cnty. Corr. Ctr., No. 12-CV-1445, 2014 WL 537576, at *5 (E.D.N.Y. Feb. 10, 2014) (finding that "plaintiff identified some pertinent official policy when his Amended Complaint referred to the nurse who said, 'Armor doesn't give stronger medication or MRIs or treatment'" (citation omitted)).

IV. HIPAA

Plaintiffs claim that Armor violated HIPAA when a facility physician allegedly discussed Plaintiff Vaiana's medical condition with Captain Ford. (Compl. at 18-19.) However, "HIPAA does not provide for either an express or implied private right of action." Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of

Am., 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009); see also Cohen v. Cnty. of Nassau, No. 10-CV-5836, 2011 WL 1630136, at *7 (E.D.N.Y Apr. 27, 2011) (dismissing inmate's HIPAA claims); Mascetti v. Zozulin, No. 09-CV-0963, 2010 WL 1644572, at *4 (D. Conn. Apr. 20, 2010) ("Enforcement of [HIPAA] and its regulations is limited to the Secretary of Health and Human Services; thus, there is no private right of action."); Barnes v. Glennon, No. 05-CV-0153, 2006 WL 2811821, at *6 (N.D.N.Y. Sept. 28, 2006) ("[T]here is no private cause of action stemming from HIPAA."). Accordingly, Plaintiffs have no claim under HIPAA as a matter of law. The Armor Defendants' motion to dismiss the HIPAA claim is therefore GRANTED and this claim is DISMISSED.

V.   Conspiracy Against Rights

The Complaint also states that "the Court may wish to consider the feasibility of conspiracy against rights" claim against the Armor Defendants. (Compl. ¶ 51.)  Plaintiffs do not specify the source of this potential claim but the Court interprets it as being brought under 18 U.S.C. § 241, which is titled "Conspiracy Against Rights."  However, Plaintiffs' hypothetical claim would fail because Section 241 is a criminal statute, which does not provide for a private cause of action.  Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) ("To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242, these claims are not

cognizable, as federal criminal statutes do not provide private causes of action." (citation omitted)); see also Nichairmhaic v. Dembo, No. 13-CV-1184, 2013 WL 6385041, at *5 (D. Conn. Dec. 4, 2013) (dismissing discrimination claim based on Section 241 because "Section 241 is a criminal statute . . . and the Second Circuit has held that it does not create a private cause of action."). Accordingly, to the extent Plaintiffs assert a claim under Section 241, this claim is DISMISSED.

VI. RICO

Plaintiffs also urge to "consider" a RICO claim based upon alleged "damage against [each Plaintiffs'] person." (Compl. at 21 n.9.) However, a plaintiff asserting a RICO violation must plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 283 (2d Cir. 2006) (citations omitted). Here, not only do Plaintiffs fail to allege any of the elements of a RICO claim, they concede that there is no injury to a business or property. Accordingly, to the extent Plaintiffs assert RICO claim, this claim is DISMISSED.

VII. Injunctive and Declaratory Relief

As noted, Plaintiffs assert various claims for injunctive and declaratory relief. As an initial matter, to the extent that Smith, Vaiana, Rodriguez, and Maynor seek injunctive

or declaratory relief, such claims are DISMISSED AS MOOT because these Plaintiffs have been discharged from the NCCC. See Salahuddin, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

This leaves Colon as the only plaintiff who could pursue the Complaint's claims for injunctive and declaratory relief. The Armor Defendants seek to dismiss the claim for a preliminary and permanent injunction because, according to the Armor Defendants, "the purported claims of deliberate indifference do not rise to the level of a constitutional violation, and thus, amount to nothing more than speculative and hypothetical allegations" insufficient to demonstrate a likelihood of success on the merits. (Armor's Br. at 21.) However, the Court has found that Colon has stated a deliberate indifference claim, and thus, it is not readily apparent to the Court that Colon cannot demonstrate a likelihood of success on the merits. The Armor Defendants' motion to dismiss the Complaint's claims for injunctive relief on this ground is therefore DENIED. Nonetheless, the Court does take note that this case was filed on September 6, 2012, and more than two years has elapsed without the filing of a motion for preliminary injunction. The Court therefore seriously questions whether Colon could demonstrate that irreparable harm would result without an injunction in the event that Colon moves for such relief.

VIII. <u>Leave to Replead</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see also</u> FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." <u>Perri v. Bloomberg</u>, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010)).

Here, the Court has dismissed Smith's deliberate indifference claim arising out his dental treatment and Plaintiffs' HIPAA, RICO, and conspiracy against rights claims. The Court will not grant leave to replead these claims because amendment would be futile. These claims are DISMISSED WITH PREJUDICE.[5]

IX. <u>State Law Claims</u>

Finally, the Armor Defendants argue that "since plaintiffs cannot assert a plausible federal-law claim against the

---

[5] To the extent that Plaintiffs assert HIPAA, RICO, or conspiracy against rights claims against the County Defendants, such claims are also DISMISSED WITH PREJUDICE because they are futile, notwithstanding the fact that the County Defendants have not moved to dismiss them.

Armor Defendants," the Court should decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3). (Armor's Br. at 23.); see 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). However, the Court has not dismissed all of Plaintiffs' federal claims. Accordingly, the Armor Defendants' motion insofar as it seeks dismissal of the state law claims on jurisdictional grounds is DENIED.[6]

CONCLUSION

For the foregoing reasons, the Armor Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Smith's deliberate indifference claim arising out his dental treatment and Plaintiffs' HIPAA, RICO, and conspiracy against rights claims are DISMISSED WITH PREJUDICE.

Additionally, the Clerk of the Court is directed to TERMINATE Dr. Omanu as a defendant in this action.

---

[6] The Armor Defendants have not moved to dismiss the state law claims on the merits and the Court therefore does not reach these issues. The Armor Defendants do move to dismiss the Complaint insofar as it "seeks to assert a breach of contract claim by challenging the legality and enforceability of the contract between Nassau County and Armor." (Armor's Br. at 23.) However, the Court does not read the Complaint to assert a breach of contract claim based on this alleged agreement.

Given each Plaintiffs' pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to pro se Plaintiffs.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September   26  , 2014
          Central Islip, NY